IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MARK EVANS,**

                              Petitioner,

              v.                                CASE NO. 18-3240-JWL

**CAROLINE HORTON, Colonel,**
**United States Army Commandant,**
**United States Disciplinary Barracks,**

                              Respondent.

## MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2241. Petitioner seeks relief from his 2014 conviction by a general court-martial based upon the holding in *United States v. Hills*, 75 M.J. 350, 357 (C.A.A.F. 2016), and upon unlawful command influence.

### Factual Background

Petitioner was tried in April 2014 by a general court-martial composed of officer members at Ramstein Air Base, Germany. *United States v. Evans*, CCA Dkt. No. 38651 (A.F.Ct. Crim. App. 22 Oct. 2015). He was found guilty of rape, assault consummated by a battery, and obstruction of justice for crimes against a female German civilian and was found not guilty of attempted sexual assault and abusive sexual contact against a male co-worker.

The Air Force Criminal Court of Appeals (AFCCA) summarized the case against petitioner as follows:

> Appellant was a 27-year-old Security Forces member stationed in Thule, Greenland. The primary charges in this case arose while Appellant was on leave in Germany in early October 2013. He went to visit a friend, a female Security Forces member, who lived in a small German village near Spangdahlem Air Base, Germany. While there, Appellant went

to a local Oktoberfest festival in the village. During the festival, Appellant met a 16-year-old local girl, YB, and, toward the end of the evening, had sex with her on the side of the driveway leading away from the festival. He was alleged to have forcibly dragged YB away from the festival and sexually assaulted her. Based on this incident, Appellant was convicted of raping YB.

Afterward, Appellant returned to his friend's house where he was staying. He threw his clothes in the washer and turned the washer on high heat. As Appellant later described it to investigators, all he was thinking while he was walking home was how he had just "raped this girl" and he needed to wash his clothes to make sure that any evidence, such as blood or semen, were cleaned out of his clothes. This was the basis for the obstruction of justice charge.

…

After walking to the Oktoberfest festival in the village, Appellant noticed Ms. YB and approached her. During their introductory conversation, YB told Appellant that she was 16 years old, and Appellant told her he was stationed in Greenland and visiting a friend who lived nearby. Appellant spent the rest of the evening with YB and her friends…. Toward the end of the evening, YB and Appellant went outside alone, to an area lit only by light coming from an opening in the nearby tent.

YB testified that Appellant then kissed her and placed his hand underneath her shirt. She refused his advances by knocking Appellant's hand away and telling him to stop. When she tried to walk away, he grabbed her by the arm and then put his hands around her neck and pulled her back. YB described the hold on her neck as being tight enough for her to feel breathless. Thinking her life was over, she attempted an unsuccessful self-defense maneuver, which caused her to fall. Appellant dragged her towards some nearby bushes. YB testified that she was crying out for help. Appellant initially put his fingers in her mouth to quiet her, which caused her to choke and cough. When she bit down on his fingers, he removed them from her mouth and held her mouth closed. YB continued to struggle and resist by kicking and trying to hit Appellant, while he physically held her down. She eventually stopped fighting because she did not have any physical strength left. Appellant pulled her pants and underwear down to her knees so forcefully that he broke the zipper on her pants, and engaged in sexual intercourse with her. While this was occurring, and with YB fearing for her life, she asked Appellant not to kill

her and pleaded with him not to become a murderer. After Appellant ejaculated, he got up without saying anything and walked away. YB ran back to the tent crying and her friends called the police.

When interviewed by German authorities, Appellant claimed the sexual intercourse was consensual. He later retreated from this position when talking to military investigators. His statement was recorded and entered into evidence at trial. During the interview, Appellant's version of events morphed from his initial claims of consent to a version of events much closer to that described by YB. He admitted to investigators that his "animalistic" urges took over during the encounter, that he pulled YB down, and he was a "little bit too aggressive," and that YB "wasn't really into it." He also admitted YB "kind of screamed out" and that he probably put his hand over her mouth to keep her quiet. He also recalled YB telling him something to the effect of "don't hurt me" while he was penetrating her. Appellant conceded to investigators that he believed YB did not want to have sexual intercourse with him, based on YB's verbal and non-verbal responses, but said he decided to continue anyway. He also confided to investigators that his first thought after the incident was that he had just raped her. Nevertheless, Appellant continued to maintain during the interview that YB did not fight back and that she took off her own pants prior to the sexual intercourse.

*United States v. Evans*, CCA Dkt. No. 38651 (A.F.C.C.A. 22 Oct. 2015)(Doc.#6, Attach. 2, pp. 3-5).

Petitioner was sentenced to confinement for 20 years, reduction to the grade of E-1, and a dishonorable discharge. The convening authority approved the sentence.

On May 15, 2015, petitioner filed an Assignment of Errors Brief in the AFCCA. He presented three claims of error: (1) whether the evidence was legally and factually insufficient under Charge II, Specification 2 to support a conviction under Article 120 of the Uniform Code of Military Justice (UCMJ); (2) whether the evidence was legally and factually insufficient under Charge IV to support a

conviction for service discrediting conduct by allegedly wrongfully doing laundry to destroy evidence; and (3) whether the adjudged term of 20 years was inappropriately severe in comparison to closely related cases.

On October 22, 2015, the AFCCA affirmed the findings and sentence of the court-martial.

On December 8, 2015, petitioner sought review in the Court of Appeals for the Armed Forces (CAAF), presenting the same grounds for relief. On March 10, 2016, the CAAF denied review. *United States v. Evans*, 75 M.J. 288 (C.A.A.F. March 16, 2016).

Petitioner filed the present petition on September 14, 2018, asserting two grounds for relief: first, that the court-martial's finding on as to Charge II, Specification 2 [rape], was fundamentally flawed because an improper instruction shifted the burden of proof; and second, that the court-martial proceeding was fundamentally unfair because of the presence of unlawful command influence.

**Analysis**

A federal court may grant habeas corpus relief where a prisoner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). However, the Court's review of court-martial proceedings is limited. *Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 670 (10th Cir. 2010). The U.S. Supreme Court has explained that "[m]ilitary law, like state law, is a jurisprudence which exists separate from the law which governs in our federal judicial establishment," and "Congress has

taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." *Nixon v. Ledwith*, 635 F. App'x 560, 563 (10th Cir. Jan. 6, 2016)(quoting *Burns v. Wilson*, 346 U.S. 137, 140 (1953))(unpublished). "[W]hen a military decision has dealt fully and fairly with an allegation raised in [a habeas] application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Thomas*, 625 F.2d at 670 (quoting *Burns*, 346 U.S. at 142). Instead, it is the limited function of the federal courts "to determine whether the military have given fair consideration to each of the petitioner's claims." *Id*. (citing *Burns*, 346 U.S. at 145). Any claims that were not presented to the military courts are deemed waived. *Id*. (citing *Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003)).

**Error in instruction**

Petitioner first alleges that the military judge erred in instructing the panel as follows:

> If you determine by a preponderance of the evidence that [Charge II, Specification 1] occurred, even if you are not convinced beyond a reasonable doubt that the accused is guilty of that offense, you may nonetheless then consider the evidence of that offense for its bearing on any matter to which it is relevant in relation to [Charge II, Specifications 2 and 3]. You may also consider the evidence of the other sexual offense for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual offenses.

(R. at 609-10).

This claim rests upon a holding entered in 2016, after petitioner's military conviction became final. In *United States v.*

*Hills*, 75 M.J. 350 (C.A.A.F. 2016), the CAAF held that a military judge erroneously allowed evidence of charged offenses to be used as propensity evidence under Military Rule of Evidence (MRE) 413, and by so instructing the panel members, had violated the accused's presumption of innocence. The CAAF ruled that evidence of an accused's commission of a sexual assault may not be admitted or considered on "any matter to which it is relevant", including propensity, if the alleged sexual assault is charged in the same court-martial and the accused has pleaded not guilty to it. *Hills*, 75 M.J. at 356. The CAAF held that under those circumstances, an instruction allowing charged misconduct to be used to show propensity violates the presumption of innocence and the government's obligation to establish guilt beyond a reasonable doubt. *Id*. at 357.

Because petitioner's conviction became final before the CAAF decided *Hills*, he may obtain relief only if that holding may be applied retroactively.

When a decision results in a new rule, "that rule applies to all criminal cases still pending on direct review," but [a]s to convictions that are already final … the rule applies only in limited circumstances." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)(citation omitted). In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court set out the analysis for retroactivity in cases on federal collateral review and identified two exceptions to the general ban on retroactivity. The first exception allows the retroactive application of a new rule if it is substantive. "A rule is substantive

rather than procedural if it alters the range of conduct or the class of persons that the law punishes…. In contrast, rules that regulate only the manner of determining the [accused's] culpability are procedural." *Schriro*, 542 U.S. at 353.

The second exception under *Teague* is for "watershed rules of criminal procedure" which implicate both the accuracy and the "fundamental fairness" of the criminal proceedings. *Teague*, 489 U.S. at 311-15. A rule is viewed as a watershed rule if it is necessary to prevent an impermissibly large risk of an inaccurate conviction and if it alters our understanding of the bedrock procedural elements essential to the fairness of the proceeding. *Whorton v. Bockting*, 549 U.S. 406, 418 (2007)(internal quotations and citations omitted). To date, the U.S. Supreme Court has not identified any such rule since its decision in *Teague*, and has cited *Gideon v. Wainwright*, 372 U.S. 335 (1963), as the only case that qualifies as a watershed rule. *Whorton*, 549 U.S. at 419 (discussing *Gideon*).

The *Schriro* Court described the analysis for a *Teague* exception as follows:

> New substantive rules generally apply retroactively. This includes decision that narrow the scope of a criminal statute by interpreting its terms … as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish …. Such rules apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him….

> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but

> merely raise the possibility that someone convicted with
> use of the invalidated procedure might have been acquitted
> otherwise. Because of this more speculative connection to
> innocence, we give retroactive effect to only a small set
> of "'watershed rules of criminal procedure' implicating the
> fundamental fairness and accuracy of the criminal
> proceeding." … That a new procedural rule is "fundamental"
> in some abstract sense is not enough; the rule must be one
> "without which the likelihood of an accurate conviction is
> seriously diminished." … This class of rules is extremely
> narrow, and "it is unlikely that any … 'ha[s] yet to
> emerge.'" ….

*Schriro*, 542 U.S. at 351-52 (internal citations omitted).

Because the *Hills* ruling changed "only the manner of determining the defendant's culpability", *Schriro*, 542 U.S. at 353, it is a procedural rule. Accordingly, the *Hills* rule may be applied retroactively to petitioner's case only if it qualifies as a watershed rule.

The Court finds that *Hills* does not meet the requirements for the creation of a watershed rule. First, the *Hills* holding is "not necessary to prevent an impermissibly large risk of inaccurate conviction", *Schriro*, 542 U.S. at 352. Rather, *Hills* interpreted, but did not invalidate, a military rule of evidence on the admission of evidence of similar crimes in sex offense cases and established a limitation on propensity evidence in those cases. Neither does the *Hills* holding fall within the very narrow category of decisions that "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *U.S. v. Mora*, 293 F.3d 1213, 1218-19 (2002)(quoting *Teague*, 489 U.S. at 311). For these reasons, the Court concludes petitioner is not entitled to the retroactive application of the *Hills* holding. *See Lewis v. United States*, 76 M.J. 829 (U.S.

Air Force Ct. Crim. App. 2017)(finding *Hills* holding did not apply retroactively and denying petition for writ of coram nobis) and *Burleson v. United States*, 77 M.J. 653 (U.S. Navy-Marine Corps Ct. Crim. App. 2018)(same, denying writ of coram nobis and writ of audita querela).

**Unlawful command influence**

Petitioner also asserts that his court-martial was tainted by unlawful command influence. He specifically argues that Lt. Gen. Susan Helms was influenced by the consequences to her of a decision to grant clemency in an earlier action involving another servicemember charged with a sexual assault. According to petitioner, Lt. Gen. Helms referred his case to trial after she was "forced into retirement" due to her decision in the earlier action (Doc. #2, p. 23).

In an affidavit submitted in the court-martial, Lt. Gen. Helms stated that she referred the petitioner's case to trial by a general court-martial three days before she relinquished command and after reviewing the Article 32 report and considering the recommendations of the Investigating Officer and a Staff Judge Advocate (Doc. #6, Attach. 8, p. 20).

This issue was presented to the court-martial in a motion to dismiss and a response. Petitioner's counsel conducted voir dire of the military judge, Attach. 9, and the parties offered oral argument, Attach. 10. The military judge issued an oral ruling and a written order denying the motion. Attach. 11.

However, petitioner did not submit this claim to the AFCCA or

in the petition for review filed in the ACCA.

As noted, the federal civil courts have limited authority in reviewing court-martial proceedings. *Roberts v. Callahan*, 321 F.3d at 995. Where a claim has been given full and fair consideration in the military courts, the federal court generally may not consider those claims. *Id*. However, if a ground for relief was not presented in the military courts, the federal court should consider the claim waived and may not review it unless the petitioner can show cause and actual prejudice for the default. *See Lips v. Commandant, United States Disciplinary Barracks*, 997 F.2d 808, 812 (10th Cir. 1993).

Here, the materials in the record show that petitioner failed to present this claim in his application to the AFCCA, as both the assignment of errors brief and the decision in that court reflect that petitioner challenged only the sufficiency of the evidence and the severity of the sentence imposed (Doc. #6, Attachs. 2 and 3).

And while respondent argues the claim is waived, petitioner has failed to address that point in the traverse (Doc. #8). After carefully considering the record, the Court concludes that the claim of unlawful command influence was waived by the failure to present it in petitioner's military appeals and may not be reviewed in habeas corpus.

## Conclusion

For the reasons set forth, the Court concludes petitioner is not entitled to habeas corpus relief. The Hills ruling is a procedural rule and is not retroactive, and petitioner failed to preserve the

claim of unlawful command influence.

IT IS, THEREFORE, BY THE COURT ORDERED the petition for habeas corpus is denied.

**IT IS SO ORDERED.**

DATED:  This 3rd day of December, 2018, at Kansas City, Kansas.


S/ John W. Lungstrum
JOHN W. LUNGSTRUM
U.S. District Judge